Mr. Chief Justice, and may it please the Court, the Ninth Circuit holds that Rule 704B prohibits only explicit opinions that the quote particular defendant had the state of mind required to convict. The government appears unwilling to endorse that full test. It seems to agree, contrary to Ninth Circuit precedent, that Rule 704B forbids an expert from testifying that people in the defendant's position always have the requisite mens rea. Such testimony never explicitly mentions the defendant, of course, but as the government seems to recognize, it is clearly in the words of Rule 704B an opinion about whether the defendant had the requisite state of mind. In other words, it establishes a class of individuals, including the defendant, and it assigns a mens rea to that class. Agent Flood's testimony here was no different. He testified that in quote most circumstances, people like the defendant know they have drugs in the car when they cross the border. The only difference between that testimony and absolute class-wide testimony is that he posited that people like the defendant usually instead of always have the requisite mens rea. But any such distinction is immaterial. Imagine an expert took the stand and said, I believe the defendant in this case probably or maybe 80% of the time or maybe there's an 80% likelihood had the requisite mens rea. Obviously Rule 704B would prohibit that testimony, and the testimony here is exactly the same. It expresses an opinion, a probabilistic opinion instead of an absolute opinion, but an opinion about whether the defendant had the requisite mens rea. So that leaves the government's final objection that Rule 704B should not be construed to prohibit what the government calls inferentially relevant testimony, and we agree with that objection. The rule that I'm advocating today has been employed by the Fifth Circuit for over 20 years, and it makes clear that modus operandi evidence, for example, things like drug trafficking organizations use couriers to transport drugs across the border, that drugs are extremely valuable, are perfectly legitimate. The rule in the Fifth Circuit is that testimony from which a jury might infer mens rea is perfectly permissible, but testimony that assigns the mens rea to the defendant or people in her class is not okay. And that's what Agent Flood did here, and for that reason we'd ask the Court to reverse. Mr. Fisher, you put quite a bit of weight in your argument on the preposition on about, and that was a stylistic change, certainly non-substantive. Do we normally put that much emphasis or that much weight on stylistic changes to statutes? Well, I think what I would say, Justice Thomas, is the Court obviously puts a lot of weight on the text of the statute, and so I start with the current text of the statute. Okay. So even with that, it says about the defendant. It doesn't say about someone else. So you're saying that even if it's indirect, it's about this defendant. Let me say two things, Justice Thomas. First, to finish the answer about the word about, what we say is that preposition is important, just like the prior preposition, as to, before the stylistic amendment, because it makes clear the Ninth Circuit's clear statement rule requiring an explicit opinion is too narrow. So that's what the preposition about does. Now, you also asked me about the defendant, and our position there is very simple, is that that word covers either a direct statement about the particular defendant or a statement about a class of people, including the defendant. I don't think the government disagrees that the rule covers a statement covering, I'm sorry, that the rule covers a class of people, including the defendant, as long as it's stated in absolute terms. So if I understand the government's position correctly, it agrees. You need not mention the explicit defendant. If you talk about a class of people that includes the defendant and say, those people always have the requisite mens rea, I think the government agrees, contrary to Ninth Circuit, that Rule 704B applies. And all we're saying — Well, I thought — Sorry. But I thought the argument there was that if you say all defendants, all people in this class do this, then it obviously would include the defendant. I think that's exactly right, Justice Thomas. So the only move left from there is to say if the expert were to testify, people like this almost always, virtually always, 99 percent of the time, probably, in most circumstances, all of those are still opinions about whether the defendant had the mens rea. They're just not absolute opinions. But they're still stating an opinion about whether a class of people, including this defendant, have the requisite mens rea. And I think that's why the text of the rule, opinions about whether the defendant had the mens rea, covers this exact — But I guess I don't understand — Oh, sorry. I was just — But the defense counsel would, of course, know that this witness is going to testify, right? Yes. And could it make appropriate inquiries about the nature of his testimony before. And so after he has testified, he could presumably stand up and ask the expert, Mr. Expert, are you saying that in every case someone knows that the drugs are in the car, he presumably would say no. And are you stating an opinion about whether this individual knew she had drugs in the car? He would have to say no, right? So I don't understand — I mean, obviously, again, you would like a case in which this was a very rare occurrence. But all he's saying is that it's not. It's whatever he wants to say in the majority of cases or whatever. And you can challenge that. And you can particularly make clear that what the concern was about — in drafting this rule, you can make clear that he is not telling you anything about this particular individual. Let me say two things about that, Mr. Chief Justice. First of all, I just want to return to the thing I said in the opening, which is if the expert were to testify that I think there's an 80 percent chance this particular defendant had the mens rea, the same kind of cross-examination could occur. You would say, Mr. Expert, you're not sure, are you? It's possible he didn't have it. Only — you know, it's only you're saying probably. And I think it would be very hard to argue Rule 704B would not cover that testimony. And the reason why — Well, I don't think — Go ahead. Oh, I think the reason why is because what the drafters of the rule cared about was not an absolute versus probabilistic opinion. What they cared about was the expert assigning a mens rea to the defendant or a class of people like the defendant. In other words, it's the subject of mens rea that's off limits, not absolute testimony. I certainly don't have experience in trials, but I don't know that — could he really say there's an 80 percent chance that this individual had drugs? I think he would have to say more generally that 80 percent of the people that I've studied or whatever had drugs. I don't know that he can ascribe — maybe he shouldn't be able to ascribe a number to this individual. Well, because they may well be situations — and again, the defense counsel can bring them up — why this person would not be like the typical individual that the expert is testifying. Right. Well, after Rule 704B, of course, the expert couldn't. But I think before Rule 704B, an expert could say — for example, an expert could say, absolutely, as happened in the Hinckley trial, I believe this defendant did not have the capacity to tell right from wrong, so therefore he is insane. And I think after — and I think Congress would have prohibited that in Rule 704B, just like it would prohibit the expert from saying, I think most likely Mr. Hinckley was insane and couldn't tell right from wrong. And whether you say that in terms of a percentage or just a verbal locution, that's probably, usually, most of the time, almost certainly, any of those things would be covered by the rule because they're all an opinion about whether the defendant had that men's right. Mr. Fisher, your — the Ninth Circuit's rule is clear. Your rule, to my mind, is unclear. I still don't understand it. If you don't think that anything from which the jury could infer mens rea is barred by 704, then I don't know where you draw the line. Well, Justice Alito, I think it might help to understand what you have to decide in this case if I give you a quick preface to that answer. Well, just give me what the rule should be. The rule should be that any testimony that the jury would naturally understand as expressing an opinion about the defendant's mens rea is covered by Rule 704B. So if it's relevant — all right, suppose the expert is asked, how many cases do you have personal familiarity with in which a person drove across the border with a large quantity of drugs hidden in the car? Eighty-three cases. And how many of those cases did the person driving the car know that the drugs were there? Eighty-three. Is that barred? I think that would be barred because it would be equivalent of saying defendants in this position always have the requisite — Well, it's just a statement of fact about his — about his — what he has personal knowledge of. Well, remember, the state — the expert testimony here — and this is in Pet. 13a — was admitted as an expert opinion about whether the defendant had the requisite mens rea. It's an opinion evidence, not fact. All right. Well, this is an — okay, so it would be okay if it's not opinion evidence? Well, I think it functionally would be opinion evidence, regardless of whether you characterize it. But, Justice Alito, let me — I think it might help the conversation if I explained the Ninth Circuit's rule raises really two questions. One is, is the expert testimony about mens rea, and is it about the defendant? And we agree with the Fifth Circuit rule that if you — if the expert gives testimony from which the jury can merely draw an inference about mens rea, that's perfectly fine. And there might be borderline cases about what's mens rea, but that's not this case because the expert used the word no. The expert used the word aware. So the only question — Well, can I touch that question about inference? So suppose that the expert gets on the stand and says, in my experience, drug traffickers always inform their carriers before they head out about the nature of the scheme. Would that come under your rule, or would it not? I think it would probably barely fall outside of our rule, Justice Kagan, and that's — but you have identified an edge case. But the reason why it wouldn't fall in — Well, Mike, I sort of expected you to say that because it's very much like the example in your reply brief about tax lawyers being caught something. So this is drug couriers are being informed about the nature of the scheme. If you say that, I don't really understand what the point of your rule is. I mean, it just suggests that all the expert has to do is, you know, tweak the way he says something and the exact same testimony can come in. So let me say the rule and the reason why I gave you the answer I did. Remember, the rule talks about not just any mental state or not facts that might lead to a mental state, but it talks about the mental state of the element of the crime to convict. So here, that mental state is knowing, and that's what the expert expressly said. In your hypothetical, you have to know not just that the defendant was told that, but that she heard it, she understood it, she remembered it, she wasn't told something different. Yeah, how about if I say — All kinds of those. How about if I said something like, in my experience, the organization always informs the courier of the nature of the scheme and doesn't allow the courier to set off until she verbally assents. Right. I think at some point you get so close that that may well be a statement about mens rea. But what I want to emphasize — I guess what I'm suggesting, and it's really the same point that Justice Alito was making, I think, is that it just seems at that point a kind of game as to how you frame the testimony so that it falls just over the line, you know, where instead you can argue that it's just inside the line. But in the end, the government is going to get this testimony in. Well, if you think that's too formalistic, you could, of course, make the rule broader. All I'm saying is that there is a core of Rule 704B, which is statements about the defendant's mens rea, and that's unquestionably what you have in this case. And how far out that goes and whether it covers your hypothetical would just be a different case on different facts. But why is it a statement — But it has to mean something. But about your own — Oh, sorry. Why is it a statement about the defendant's mens rea? That's the part that I'm not understanding. So, you know, the chief says if the expert in a situation says 80 percent of the time, you know, when these conditions exist, the person knows, why isn't there still an inference to be drawn as to whether or not the defendant is in the 80 percent or the 20 percent? Because the expert would not — the expert is just giving a less-than-absolute opinion in that regard. No, I understand, but there's — It's still an opinion about whether. Right. And it's still about people in the defendant's class. Let me put it to you this way, Justice Gabbard. No, the question is whether the defendant is in the class. That's what I'm saying. The inference that remains from a testimony that is not 100 percent is whether or not the defendant is in the class that the expert has identified. Well, the defendant is certainly in the class, just to use the facts of this case, because the class is people crossing the border with large quantity of drugs in their car. So the defendant is in that class. And the definition is simply that the expert is giving a probabilistic opinion as to whether or not she had — But couldn't you characterize it as the expert is speaking to the class of people who have drugs in their car and know about it? Well, I think — And they say — and if you characterize the class as that, then the question is still whether the defendant is in that class, right? Well, I think, you know, that's one way to put it. But I think, Justice Jackson, imagine the expert testified, I think there's an 80 percent chance or I think probably this particular defendant knew she had drugs in the car. That would still leave the same amount of inferential analysis, if you want to put it that way, to be done by the jury. But it's not inference as to mens rea. It's just inference as to whether or not the defendant is guilty or not. It's still a probabilistic opinion. And so I think the only thing I want to persuade you of is that just like an expert giving a probabilistic opinion about the defendant herself leaves, if you want to put it this way, some room for the jury to confirm that that expert is correct, that this defendant is one of the majority, the same thing would be true if the expert said the thing about the defendant herself. And convert — and the other version of this, I think, that helps prove my point is that I think, again — and I'll let my friend speak for himself — but I think I understand the government to say that if the defendant says — if the expert says people like this always know they have drugs in the car, that's covered by Rule 704B. Now, that's contrary to Ninth Circuit precedent, and it doesn't explicitly mention the defendant, but it is covered. And so if you put together the notion that you don't have to explicitly mention the defendant to cover the defendant with the notion that probabilistic opinions are covered just as much as — Well, I don't know how that testimony — every single person who drives a car across the border with a large quantity of drugs knows that there are drugs in there. How that gets in under 702, an expert's testimony is admissible under 702 if it is the product of reliable principles and methods. I don't know what reliable principles and methods could lead anybody to conclude that every single person who does that knows what's in the car. So there are other rules that take care of the extreme cases. You have — the expert has to satisfy 702, and then there's always 403 if some — if in some case the trial judge thinks this is — this goes too far. I don't know why you have to try to make an exception in 704. So let me go through both the rules you mentioned, Justice Alito. Under Rule 702, I think the reason why that evidence typically comes in is the expert couches it as in my experience. And to go back to your hypothetical, in my experience, 83 out of 83, therefore people always know. And we cite cases in our brief where the expert is given this exact kind of testimony up to 2013 in the Ninth Circuit. Well, I mean, the fact testimony, 83 out of 83, is one thing. Whether it's permissible to draw from that experience the inference that they always know, I think that's dubious under — Well, I think you're — I think you may be right. The NACDA brief talks about some of the problems with law enforcement expert testimony that exists sort of writ large across the courts. And maybe you have a Rule 702 case that you might want to look at sometime when it comes to that problem. But I don't think you need to do that here, because Rule 704B is the finer-grained rule that deals particularly with men's rights. Yes, sufficient. 704 is party agnostic. And so what's going to be good for the goose here is going to be good for the gander. And I would think that would mean that if we're going to allow this testimony, that defendants are going to be able to hire former DEA agents to come in and say, well, there's an 80 percent chance that drug mules don't know. Is that the world we're going to invite if we find for the government? It would certainly be allowed, and whether defendants can find those experts is maybe a different question, but certainly — In my experience, you know, it's not too hard to hire an expert witness. So I mean, but that's what we're going to have. And I'm just wondering how far removed we're going to wind up from what motivated, if you want to talk about it in that terms, or the text of 704 as adopted, which was to stop — you know, it was motivated in part by the Hinckley case. And we're going to wind up having experts saying there's an 80 percent chance he didn't know it was opposed to the United States, he thought it was a duck. Or virtually — I'm virtually sure, and I'm virtually positive in the other direction. We're going to be right back where we started. Right. Because what Congress was concerned about was the confusing spectacle of competing opinions on mens rea. And even if — I'll just add one more thing — even if there were just one expert, if you do want to look at congressional intent, what that intent is clear about is that experts should not be talking about the ultimate issue of mens rea. It's perfectly fine to talk about mental states, it's perfectly fine to talk about experiential facts that lend to inferences about mental state, but the jury's special role in criminal cases is designed to find mental state in experts. But what about — And then just to finish up, you know, the fact that the parties can often get inferences through facts about mens rea, and therefore come virtually close to this, is that anything unusual in trial practice? I was always taught there's always a way to skin the evidentiary cat, and I can come up with a whole bunch of facts that suggest that somebody does or doesn't have a mental state. Yeah. That's exactly right. And of course, the prosecutor at closing can connect all the dots and make an argument to the jury. So I'm not here to make a big, dramatic argument, but I am here to make a meaningful argument about, as testimony that is this explicit about the defendant's mens rea. Well, that actually, Justice Gorsuch's question brings up one that I had, is what about your client's own expert testimony in this case, you know, an expert who says, there's no way for someone to suspect or know that the car has drugs in it? So I think, Justice Barrett, that particular sentence of our expert's testimony crossed the line of Rule 704B. But remember, the trial judge had already ruled at that point that Agent Flood's testimony was admissible, and had construed the rule in the way the Ninth Circuit does, to bar only explicit opinions about the defendant herself. So the defendant was playing under the same rules that the prosecution was playing under. We agree on a retrial, but that particular sentence would be added. But that would have to stay out. And what about framework evidence? So the evidence professors say framework evidence is valuable, and it comes in in most cases, and you know, your average juror's probably not going to understand how cartels work. So it would be valuable, I would think, to say things like, well, you know, cartels like to know where the car's going to be parked on the other side of the border, so they know where to find the drugs. This is the value of the drugs, so this is how cartels do it. So the evidence professors say this would be a terrible rule, because framework evidence is valuable. What rule do you see for this? I think the professors just misunderstand our rule, and we're, again, not advocating something out of thin air. It's the Fifth Circuit's own doctrine that we're advocating here. And that doctrine makes clear all the stuff you just posited is perfectly admissible, because again, there's no statement about mens rea in those sentences you just read me. They're just facts in the world that make it highly likely or unlikely a person had a mens rea, but it's not statements about knowledge to use the mens rea in this case. And this brings me back to Dr. Fagin's... Mr. Fisher, sometimes statements about knowledge are actually defense important. You suggested that in this case the defense put that evidence in sort of because they were living in the world that the court had already established, but one of the things the evidence professors talk about is that if you exclude this kind of evidence, you could have a situation in which you have a battered spouse who assaults the person who is beating them, and they're not going to be able to put on expert evidence that negates mens rea in that situation. What do you say about that? It seems to me this is not all net positive for defense. So I think this is the flip side of the exchange I have with Justice Gorsuch. The defendant in that situation can put on an expert to talk about the phenomenon of expert could testify about the cycle of violence and learned helplessness and the features of battered women syndrome. The only thing the expert could not do is say, I think this defendant or people in her position would not have had the requisite mens rea. But then at closing, the defendant can make that very argument. It's just direct testimony about the precise element of the crime that is barred, the mens rea element of the crime that is barred by Rule 704B. So again, I don't have... So there's a difference between saying the defendant herself didn't have the mens rea or women in this situation didn't have the mens rea. I guess that's what I'm not understanding about your argument. I think that those two things are both covered by the rule. Now the... Both covered by... But I thought that's what you just said. They could get up to... No, no, no. I think they could describe women in the situation of battered women syndrome and what those symptoms are and what those features are of that condition. But the expert could not testify as to whether or not a person with that condition would have had the mens rea to commit this crime. It's just the mens rea testimony. It's not mental state testimony, mental condition testimony more generally. Mr. Fisher, I want to articulate your rule. And you're right. It's different, but you keep saying it's the Fifth Circuit rule. I'm not sure it's the Fifth Circuit rule. The Fifth Circuit has criticized evidence with respect to what the drug cartels' knowledge are. So I think you're breaking from the Fifth Circuit as the government breaks from the Ninth Circuit. Everybody's trying to find that happy new year. But the rules of evidence don't say, even if you can get something in a different way, your mistake is you can do it this particular way all the time. You know, I'm thinking about we have a lot of hearsay that you can't get it in on the hearsay, but you can get it in for other reasons that don't go to the ultimate guilt of people. Rules are rules, and there's a reason for them. And I think what you're arguing is this rule says you can talk about modus operandi of drug traffickers generally, but you can't talk about a particular defendant or class of defendants and what their mental state is, because that's what the rule tells you you can't do. So it might feel like an exercise without a point, but it is an important point. Isn't that what you're trying to say? I think that's right. I think we are defending pretty much what happens in the Fifth Circuit. And the reason why that's the rule is because of the importance of mens reas. As the court itself has highlighted in cases in recent years, it is the heart of our criminal law and it's the heart of the jury's function to make that moralistic, qualitative determination. So if it seems formalistic when I say you're drawing a line, a protective barrier around mens rea, it's because that's what the right of jury trial is about, and that's what the drafters of this rule recognize. Has the federal government had any trouble convicting drug traffickers in the Fifth Circuit? Not to my knowledge. And of course, the government had 20 years to bring this issue up if it didn't like the Fifth Circuit law. So I think it works pretty well in the Fifth Circuit. But let me say something that would lead. If you agreed with the government's concession now, that saying that people in this position always have the requisite mens rea, you're going to have to draw some very difficult lines. What if the expert testified and said people like this virtually always, 99% of the time? What if the expert said, maybe it's hypothetically possible a defendant, take the 83 out of 83, and the expert said, maybe it's possible somebody could not have known, but I've never seen such a case. Would that count? What if the expert said, like in this case, there's only three situations I'm aware of where an expert, I'm sorry, where the defendant doesn't have the mens rea. And those three situations are all different from this case. And then take it one step further in closing argument when defense counsel tried to argue, well, Agent Flood admitted there's a few situations defendants don't have the mens rea. The government objected and said, well, you can't argue that other situations might be possible because here's the thing. Those all sound to me like cases in which Rule 403 might well come into play. Well, remember what the Ninth Circuit says about Rule 403 and Rule 401 is that this testimony goes to the heart of a blind mule defense, like in this case. So it's the exact opposite of being irrelevant or unduly prejudicial. No. Well, it's relevant, but it has a highly prejudicial value, and maybe it would be excluded by a lot of trial judges. Well, I think the government's position is in line with the Ninth Circuit, and we concede there's force to it, that this evidence is damaging because it's so directly relevant to the defendant's mens rea. That's the problem with it. Thank you, counsel. Justice Thomas? Justice Alito, anything further? Justice Alito is inviting, I think, even more chaos in the among courts. If you're going to rely on 403 or 702 or any individualized decision-making by judges, you're just throwing this up into the air with no clarity. I think that's right, Justice Sotomayor. One way to think about this is you have Rule 403, which is maybe the broadest, most flexible of the rules of evidence to deal with prejudicial evidence. You have the next narrower rule, which is Rule 702, which is just about expert evidence and a reliable basis for that evidence. And then you have the narrowest of them all, Rule 704B. I'm only asking today to apply Rule 704B, which is... Once you're asking courts to go into asking every police officer, how many of these cases have you had, and when am I going to decide that 10 cases is not adequate, but 83 might be. When there's 550,000 drug arrests, is 83 enough? I don't know the statistical answer to that. Your rule is much simpler, isn't it? If you're going to talk about a defendant and what a defendant is thinking, that's off limits. If you're talking about modus operandi of what others do or don't do, that's okay. Right. So my rule has two components. One is, is it about mens rea? Unquestionably, yes here, because the expert used the word no. And is it about the defendant? And our rule there is very simple as well, directly about the defendant or a class of people including her. That's the full scope of it. And what is permissible, as you said, is if an expert says, drug traffickers prefer to hire people that the traffickers know and trust than to hide the drugs in a stranger car, or drug traffickers want to know where their car goes, so they're going to use a or something like that, that's modus operandi. Descriptive modus operandi evidence that does not speak to mens rea directly is perfectly fine. And Justice Sotomayor, let me add one thing to what you were talking about, because I think it goes back to the Chief Justice's question about cross-examination, and maybe Justice Alito's question about Rule 702 as well. If the expert testified either on direct or cross, look, this is my experience across most cases, but I can't tell you anything about this particular defendant, because I don't know anything about this defendant, whether or not she had the mens rea. Then you would have a real objection under relevance or Rule 702. Of course, you had nothing like that in this case. So the plain implication to the jury was not just most people like this have the mens rea, but I believe this defendant has the mens rea. Justice Kagan? I feel as though I should offer a bit of my time to Justice Alito to respond to being a chaos insider. I'll ask Mr. Guarnieri about that. What was my question? Here's my question. You've relied quite a number of times on the government's apparent concession that the 100 percent case would come out your way. I took the government to be hedging on that question, I'll just tell you. We'll find out soon enough. But if the government is not, in fact, taking the position that you took about the 100 percent case, what changes in your argument? How much of your argument relies on that supposed concession? I'm not trying to rely on the concession as such, and I think you're right. There's a little bit of hedge in the brief, fairly, so you can ask him. But I think it is a correct statement of law, regardless of who says it or why, that saying everyone in this position has the mens rea is the equivalent of saying the defendant in the courtroom has the mens rea. It is a class of people that necessarily includes the defendant. So there's really only two things you have to decide in this case, Justice Kagan. That's the first thing, is that when you move from the defendant to a class of people including the defendant, whether you're still within 704B, the answer is yes. And the second question is whether, if that opinion is stated in probabilistic terms instead of absolute terms, you're still within 704B, we say yes, at that point you're done. And you can leave for another day modus operandi versus direct statements of mens rea, because you have a direct statement of mens rea here. Justice Gorsuch? I just wanted to explore a little bit further your response to the Chief Justice. The 80% he comes in and testifies, 80% no, but admits that he doesn't know about the defendant. How is that evidence in court in the first place? That's what I was trying to say, Justice Gorsuch. I think that if the expert disclaimed any knowledge whatsoever about this defendant and any inference that might be drawn from his overall experience or from his probabilistic opinion, then I think the defense counsel would rise to object and have a very good ground to exclude that opinion. But that's not what happens here. Whether it comes out on direct or cross, it wouldn't make any difference. That's right. He shouldn't be in court. The only reason the government is offering this testimony is because the expert is implicitly saying, I believe this defendant probably falls within the group. There's no disclaimer here that the expert is offering, and that's the whole point of the testimony. If I could say one other thing, Justice Gorsuch, that is underscored by Agent Flood's answers on cross-examination, that there's only three possibilities that I'm aware of where the defendant does not know they have drugs, and those possibilities are all different from this case. Right. So we add that all up, and the expert is effectively saying not just most people, but this person by logical implication knew she had drugs. Correct. And so in this case, the only implication is she knew. In the other cases we've been discussing of 80 percent, and I don't know, then you've got a Daubert problem possibly, and we're going to have to tackle that in the next case. I think that's right. This is the easier case in that sense, too. It's not just a most case. It's a most, and the only situations I can think of are something else.  It goes down the other road. We're going to have a bunch of Daubert questions. We're also going to have how much probability is enough probability questions, too. You could. I think the better rule there is that when it comes to Rule 704B, any opinion, any problem No, I understand your view, but if you should lose, we're going to have Daubert questions, and we're going to have probabilistic questions about how much probability is enough. Exactly. Ninety-nine percent, I'm virtually certain, but I can't guarantee all these kinds of verbal formulations would be borderline cases. Mr. Scanlon? On the text of the rule, that seems to be a problem for you, just in my view, and then you rely heavily on the government's saying, well, even though the text only says that it prohibits expert testimony, that this defendant had knowledge, that may also prohibit testimony that all defendants in the class always have knowledge, and you seize on that. Understandably, but then the key move in your argument, I think, is that always means the same thing as usually, and that's just not true. Oh, I agree that's not true. So there's two steps, Justice Kavanaugh. So the first is whether the defendant, to use the text of the rule, covers a class of people including the defendant, and I think the answer is yes, and I can just give you a couple more examples. If somebody was trying to figure out what a member of this court thought, and somebody answered, well, Supreme Court justices always think X, that would be a statement about whether that particular justice had a particular state of mind, and then the second step is whether the always versus probably matters. It matters in some sense. It's a degree of certitude, but to go back to the text of the rule, it is still an opinion about whether that justice has something in her mind, so to say, if you're trying to figure out what some justice thinks, and somebody says justices usually think X, that is a statement about whether the justice has a particular state of mind. Now, it's not absolute, but it goes to the nature of... How is testifying that usually, how is that an opinion about whether the defendant did have a mental state? And it's opinion about whether the defendant did or did not have the mental state, so did or did not covers the full scope, and I think an opinion can be absolute or it can be probabilistic. Take the opinion, take the example we give in our brief where a therapist after interviewing a patient says, people don't usually have trouble getting out of bed unless they're depressed. Well, that's not a direct statement about that individual, but in context, we understand it to be saying, I think you're depressed. We've talked a lot this morning, Justice Kavanaugh, about the nature of expert testimony. Expert testimony is rarely absolute. I think a couple of you have pointed that out today. It's usually a probabilistic opinion. So to go back to the Hinckley case, if the expert had said, I think John Hinckley was probably insane, he probably couldn't tell right from wrong, that wouldn't be an absolute opinion, but it would have to be covered by Rule 704B. And the only thing I'm trying to persuade you of today is to say most people in Hinckley's position wouldn't have known right from wrong is exactly the same statement as saying, I think Hinckley couldn't tell right from wrong. Thank you. Justice Barrett? I just want to be sure that I understand how we would articulate your rule if you win. So this is, you brought up your depression example. So on page 18 of your brief, in that same paragraph, you talk about the example where, you know, high school seniors generally know the honor code. So this kind of is similar to the hypotheticals Justice Kagan was giving you early on. What if I said, so that falls outside of your rule because it refers to knowledge. No. Right. It falls what now? It falls, that would be inadmissible under 704B under your rule. Right. Okay. But what if you had somebody testify, and let's just say it was an expert, not a fact witness, that yes, the honor code is distributed to all students. We give them time to read it. They sign it at the bottom and then we walk out. What about that? I think that would be okay. That would be okay. And why? So it's just the word knowledge? Is it that formalistic? Or once you start stepping back and it takes an inference to get there? Right. It's an inference, Justice Barrett. In that scenario you're describing, there could still be questions about whether the person who signed the honor code understood the explanation, whether that person remembered the honor code when the alleged transgression happened, et cetera. But you asked me about how you would articulate the rule. If you wanted to be extra careful, you don't even have to articulate that part of the rule. Here you have a statement directly about knowledge. So whatever the line is between knowledge and other statements that might be less direct about the particular mens rea, that would be a different case. Well, I think we'd be down the sowing chaos road if we didn't... Well, either way you're going to have to answer that question. Pages 28 to 30 of the government's brief, it says that testimony needs to be understood in context and what it signals in so many words. I think the government agrees that statements are going to have to be understood in context as to whether or not they're about mens rea. So we agree with that. We might calibrate that line a little bit differently and you could give a first cut at it in this opinion. But again, all you have to say in this opinion, this goes back to Justice Kavanaugh's question, is that the words the defendant cover not just statements about the defendant, but they cover statements about a class of people that includes the defendant, regardless of whether they're absolute or probabilistic. Then you're done. You can say that, you know, therefore we can give some guiding principles to when something is about mens rea or not about mens rea, but you wouldn't even have to do that strictly speaking in this case. Thanks. Justice Jackson? So I guess I'm still a little confused about how your rule works. I apologize for that. But Justice Sotomayor suggested that you're saying that expert testimony about modus operandi and actus reus is fine to come in, but expert testimony about mental state is not. So I don't know what happens with battered women's syndrome, which is testimony about the mental state of the defendant. Are you saying that's in or out, and why? So mental state in general is okay. So an expert can say, I believe this defendant has battered women's syndrome. I believe this defendant, to use the Hinckley example, has schizophrenia. So that's one form of mental state. I thought that's exactly what the rule says. You're not supposed to have an expert do. No, no, no. What the rule says is the mental state required as an element of the crime. Right. But in the Hinckley case, the element we were talking about was the defense that he was saying, I'm insane. And so I thought the rule was that you were not supposed to have dueling experts talking about whether or not he's insane. So I'm positing a situation in which the question is, does this person, you know, are they guilty of assault? And they would like to put on a defense that they had battered women's syndrome, that going to their mental state, in or out? Some yes, some no, but this is a very important question, so I want to make sure I get it right. So to use the Hinckley example, you could have dueling testimony as to whether or not John Hinckley Jr. had schizophrenia or not. That's not the element of the offense. You could have dueling testimony as to whether or not John Hinckley Jr. had hallucinations or delusions or had difficulty perceiving reality. That's not the element of the crime. The element of the crime is being able to tell right from wrong. That's what you could not have expert testimony about. But it says element of the crime or defense. Right, but the defense is still negating the mens rea. So the critical thing is to pinpoint the mens rea. So in the assault case, the mens rea, I think, would be something like a reasonable belief that you're acting in self-defense. I think that's what a typical battered women's syndrome case would look like. An expert can take the stand and say, I believe this person has battered women's syndrome. Here are characteristics of battered women's syndrome. There's a cycle of abuse. There's learned helplessness. There's difficulty leaving. All these things that are not the element of whether or not she believed her life was in danger. You disagree with Justice Sotomayor suggesting that all that's off the table because it's mental state evidence. We have to do some sort of finding. I don't know whether I'm disagreeing with Justice Sotomayor, but at least what I want to say is mental state evidence, let's give another lay example. The defendant, I believe people in this situation are nervous. That would be perfectly fine. It's a mental state, but it's not going to be the element of the crime or a defense. All I'm saying is that rule 704B keeps out that last step, that assigning the managerial to the defendant. One final question. Thank you. What about intent to distribute? That is a pretty standard charge, drugs with intent to distribute, and you have an expert who comes in, and in my experience, this is also pretty standard. The police walk into the apartment. There's all this paraphernalia and chemicals and stuff that a layperson might not understand what this is about, and so the expert that the government puts on the stand says, in my expertise, people who have this kind of material in these quantities in their apartments have it because they're manufacturing drugs that they intend to sell, in or out? Out because the expert is speaking to intent, which is the mens rea element. So if they don't put the word intent in, they're manufacturing drugs for sale, in or out? I think that is a harder case, and so the line would be between saying, you know, scales are used to weigh drugs that, you know, they often get bagged up and sent out for sale. Things about the way that a drug operation might work. Things about what those pieces of equipment do or don't do with regard to drugs would be okay, but a direct statement of intent would be not okay. The D.C. Circuit has explained this very clearly, and other courts have held that. Thank you. You're right. Okay. Thank you, counsel. Mr. Garnieri? Mr. Chief Justice, and may it please the Court. By its plain terms, Rule 704B comes into play only when the expert is offering an opinion about the defendant's own mental state. That's the key textual limitation that results this case. Agent Flood's testimony did not violate Rule 704B for the simple reason that he did not express any opinion at all about whether Petitioner herself knew about the drugs hidden in her car. Indeed, he did not mention Petitioner a single time in his entire testimony. The Court should reject Petitioner's invitation to replace the line drawn in the text of Rule 704B with one of her own invention. According to Petitioner, Rule 704B prohibits a novel and amorphous category of what she has called class-wide mens rea testimony. That proposal cannot be squared with the text, purpose, or history of the rule. And I think the history is particularly instructive here. I want to emphasize three points this morning. First, when Congress enacted Rule 704B in response to the acquittal of John Hinckley, Congress adopted a reform that applies equally to both sides. It is party agnostic, as Justice Gorsuch observed this morning. It is not a rule targeted at government experts, and whatever the Court says in this case will also govern future expert testimony offered by the defense on issues like insanity or battered women syndrome. Second, Congress kept Rule 704A in place. The general rule in federal court continues to be that opinion testimony is not objectionable merely because it embraces an ultimate issue. Rule 704B operates as a limited exception to that general rule. And third, the original text of Rule 704B confirms that an expert may still testify with respect to the mental state or condition of the defendant, as long as the expert stops short of opining on the ultimate issue. Agent Flood respected that limitation here. I welcome the Court's questions. But Mr. Fisher makes the point that, in effect, when you talk about the probabilities of someone carrying drugs, that you are, in effect, talking about the defendant, that you could only be concerned about the conduct of the defendant. So how would you respond to that? Well, I think my friend on the other side is conflating two distinct issues in this case. One is whether the expert is offering an opinion that is about the defendant herself. Agent Flood did not do that here when he testified in general terms that drug traffickers do not entrust large quantities of drugs to people who are unaware of those. Well, his point is that it wouldn't be relevant otherwise if you weren't talking about the defendant. Well, I think that's right, Justice Thomas. It's true that it is relevant because we are asking the jury to infer something about the defendant herself, about Petitioner herself, from the expert's opinion. But that doesn't make it an opinion. It doesn't mean the expert is expressing an opinion about the defendant. When Rule 704B talks about expressing an opinion about the defendant, it means expressing an opinion framed in terms of the defendant. So if I understand it right, for relevance purposes, it has to be about the defendant, right? Yes. I think that's what makes the testimony relevant. That's the only way in which you get this evidence in, in the first place. It has to be about the defendant. We're not talking about some stranger to the suit, right? Yes, I agree. So it's about the defendant for purposes of 702, but it's not about the defendant for purposes of 704. Help me with that. It is relevant to the defendant. Let me give you a plain language examination. Is it with respect to the defendant? If I told you, Justice Gorsuch, that I had just read a terrific book about Julius Caesar, I think you would expect that the book at least mentions Julius Caesar somewhere in there. No. If you learn that it's a book about ancient Roman... No, I wouldn't necessarily... You know, it could be about his times and his place and the Roman Empire of the era. I think that's exactly right. And that's my point. Okay. And I'm drawing an inference about him. That's right. That's exactly right. And that's how we think the rules are. You want us to draw... You want the jury to draw an inference about the mental state of this defendant, don't you? Yes, we are offering the testimony because it is relevant to the jury's assessment of petitioner's own mental state. But that doesn't mean that it is an opinion about the defendant's mental state. If you accept the logic of that argument, a great deal of testimony... I would think that a great many district courts would, on that theory, say that this testimony should be stricken on 702 grounds. It's just not relevant. 704... Is that what you're inviting? No, we are not inviting that, Justice. No, of course not. The district court, in this case, petitioner made a Rule 401 objection to the relevancy of this testimony. The district court overruled it. Petitioner has not renewed that contention in this court. I think what we are... There is testimony that is relevant to the jury's assessment of the defendant's mental state that is nonetheless not testimony that is opining directly on the defendant. Nor could the defendant, excuse me, nor could the expert actually opine because he's not an examining expert. Isn't that right? I mean, there really isn't a world in which this expert could speak directly in a sense to what is going on in this defendant's mind. The only thing he is competent to testify about is sort of in his expertise how these things work as a general matter, right? I think that's correct, Justice Jackson, and indeed in this particular case, Agent Flood confirmed that he was not involved in the investigation of this case when he was asked that on cross-examination. Mr. Gornier, do you want to first answer the 100% case? Sure. So I think Petitioner is misreading our brief on that point. I mean, we think that the distinction between testifying in absolute terms or conditional terms about the way that drug traffickers operate is really more of a reliability issue. I don't think at this point in time we could sponsor any of this testimony. So in fact, your argument would be the same if the expert got up and said, in my experience, 100% of the time drug traffickers use couriers who know that there are drugs in the car. Yeah, I think we would have the same Rule 704B position with respect to that testimony. So all defendants know of drugs, and you're still not testimony about the defendant's mental state? Well, Justice Gorsuch, I want to be careful and precise here. If the expert testifies that all defendants know, or that all drug traffickers and this defendant, or this defendant and other traffickers know... No, no, no, no. All mules, to use the common parlance, all mules know that the drugs are drugs in their car. Yeah, I do. That's still permissible under your view. It's not about the defendant. It is not objectionable on Rule 704B grounds. Still not about the defendant. It doesn't mean that testimony would necessarily... The defendant just happens to be there, it just happens to be a trial in which that person comes in jeopardy, but we've got this testimony over here, it doesn't matter. Justice Gorsuch, isn't this necessarily saying 100% of defendants know, aren't you necessarily saying this defendant knows? Isn't that what Justice Gorsuch is... I think the distinction... Apparently not. Isn't the answer, Mr. Guarnieri, that... Well, what is the answer, Mr. Guarnieri? Thank you, Justice Kagan. I think the distinction between those two, the key point that we're trying to get across is that Rule 704B forbids a particular form of opinion testimony. The expert cannot opine on the defendant's own mental state. And so we acknowledge in our brief that there are going to be circumstances in which experts testify about a class of people and put the defendant in that class. That form of expert testimony could be objectionable. But if the issue is just that the defendant is describing a general category of person... I don't think we need to make a categorical statement about that group of people. I don't think that's a 704B problem. How about this? In my experience, I've seen a lot of cases, and I'll tell you that a hypothetical person with this many kilograms of drugs in his car, caught in this kind of way, in a car with this naked model, who says the following things to the police when she's caught, in my experience, a person like that is always going to have known about the drugs in her car. Yeah, I think that would be objectionable. Of course, that's not the testimony we had in this case, but the D.C. Circuit has a case which we cite in our brief addressing that kind of use of mirroring hypotheticals. I think that's just a transparent way to circumvent Rule 704B. That's not this case. Okay, so then I'm not really understanding. Because if you say, look, you don't have to say, Ms. Diaz, no, as long as everybody understands that the description you're giving of the person who knows is, mirrors who Ms. Diaz is. So you're not willing to be as formalistic as to say she has to be named. You're willing to say the same rule should apply if there's a description that basically matches her. Well, then I don't get why you're not willing to say if the description is a class in which everybody agrees she's a part, and it's 100% of the class. Well, Justice Kagan, the way we would articulate the rule is the same way that the Ninth Circuit has articulated and the Second and D.C. Circuits and other courts of appeals have articulated. And that is that what the expert may not do is testify in such a way that not necessarily compels the inference that the defendant had the right to say. But that's just a matter of degree as to whether the class is really super narrowly about one person or then gets a little bit broader or then gets a little bit broader. But in all these cases, the person is a member of the class, however exactly you define the class. So I guess I don't see why at some point you're willing to draw the line. Well, I'm not sure that's true, Justice Kagan. There are going to be cases in which there's a dispute, a factual dispute, about whether or not the defendant is in the class. Does the defendant have this mental condition or defect or this other one or perhaps no mental disease or defect at all? So you can, the parties can join issue on whether the defendant is even in the class that the expert is describing. To step back here, I also want to again stress that Rule 704B is a limited exception to the general rule here, which is 704A. And that is that in general, opinion testimony is not objectionable just because it embraces an ultimate issue. You can have, when Congress enacted Rule 704A, it made a judgment that we're going to in general abolish the ultimate issue rule in federal court. And really these disputes should be channeled through disputes about the reliability of the expert's testimony, whether the expert's testimony is based on sufficient facts and data under Rule 702. You can have robust Daubert gatekeeping under this court's case law, which is now reflected in the text of Rule 702. And Rule 704B is just a limited prohibition on a specific form of expert opinion testimony in criminal trials. Agent Flood's testimony looks nothing like the testimony that Congress forbid when it enacted 704B. The other point that I would make this morning, you know, and this I think goes to some of the concerns about how you engage in the line drawing that both parties' positions might present. I take, my friend on the other side has moved this morning in response to a number of the more difficult questions the court posed, was to say that, well, testimony that is, would provide a basis for the jury to infer the defendant's mental state is not actually about the defendant's mental state unless it is framed explicitly in terms of knowledge. So for example, the tax lawyer example that we offer in our hypothetical, I take my friend on the other side to agree that testimony that tax lawyers are generally instructed in the requirement to pay some particular tax is not opinion testimony about, that would be forbidden by 704B because it doesn't speak to knowledge. And I think that's actually the correct understanding of about. It's not about mental state if it's not framed directly or expressly in terms of mental state. But the problem is, my friend on the other side doesn't logically carry that through to the rest of the text of Rule 704B. The opinion has to be not just about mental state, but also about the defendant's own mental state. And to be about the defendant's own mental state, the expert has to be in general explicitly taking the stand and expressing an opinion for the jury about what was in the defendant's mind. Functionally equivalent. Now what we're arguing about, because you've just conceded earlier that if you do, we can argue about how wide you define the class, but you could just say anyone who has 55 met pounds of drugs in their car, hidden or not, knows the drugs are there, period. To me, that's a functional equivalent of saying, this defendant had 55 pounds of drugs, so she has to know. And you admitted to Justice Kagan that there is a point at which you reach that functional equivalence. Yeah, I wouldn't really describe that, though, as a dispute about how you define the class. I mean, I think in general... No, the dispute is about, are you saying it's this defendant? I think in general, the rule here is that the expert may not express an opinion that leaves for the jury no room to make the ultimate inference for itself. If you express an explicit opinion about the defendant's state of mind, that could be sufficient for a violation. All we're saying is we want to reopen the possibility that that might not be necessary for a violation, because you're going to have these extreme cases in which an expert contrives to offer some opinion that carefully avoids stating an express opinion about the defendant in that particular case, but nonetheless, logically, necessarily compels the inference that the defendant had the requisite mental state. So we're talking here about the marginal case. And again, to return to some of the... Can I just ask you, before you go on, I'm wondering whether some of the problems here might be...are not really focusing in on the fact that there are different kinds of experts and different kinds of testimony. And so, to the extent that this rule says that it relates to an opinion about whether the defendant did or did not have a mental state or condition, and it was generated in the context of a dispute about testimony related to the psychiatric or physical condition of a particular defendant, Hinkley, I'm just wondering whether the problem might be that this is really directed at not this kind of testimony, the kind of testimony that comes from an expert who hasn't examined this defendant, doesn't know anything about this defendant, is talking about framework or, you know, general modus operandi, whereas this rule seems to be targeting the kind of expert who has examined or knows something about this defendant's mental state. What do you think about that? Well, Justice Axson, I think that's correct as a historical description of what Congress had in mind here when it enacted Rule 704B, but I think the logic of that intuition supports our position in this case, not petitioners. And that is because when Congress enacted Rule 704B against the backdrop of robust public debate about what appropriate testimony, what appropriate expert testimony should be offered in criminal trials involving the insanity defense, it was clear to everyone at the time that Congress was not eliminating all expert testimony in insanity trials. No, of course not. I mean, isn't the line, I thought in the text, had to do with whether it's an element of the offense or the defense? So for example, in Hinckley, an expert could still get up and say, and opine on Mr. Hinckley's mental state to the extent he has schizophrenia, you could say that. And a battered woman, she has what we would define as battered women syndrome. What they can't do is say, and therefore, Mr. Hinckley or any other defendant did or did not have the mental state required to either convict or to make out an insanity defense. That's the line, isn't it? Yes, Justice Schwartz. And I think that is just an articulation of our position in this case. And to return to our earlier exchange, and I think this again goes to Justice Jackson's question as well. So if that's the case, counsel, what's the difference between saying Mr. Hinckley didn't understand right from wrong, A, B, a hypothetical person who meets all, looks just exactly like Mr. Hinckley, couldn't have understood right from wrong, and C, all persons with the characteristics of Mr. Hinckley do not understand right from wrong. What is the difference between those three statements? If I've understood the examples that you have offered, Justice Gorsuch, those are all just variations on the expert taking the stand and saying that the defendant, in fact, met the legal standard. And, again, if I could go back. They're all impermissible. I think this all could be impermissible if I've understood the three examples. But Justice Gorsuch, again, earlier, I think one of our exchanges was about, well, isn't it only the fact that it is coming into court at all shows that it's being offered to prove the defendant's mental state. And I think the Hinckley example shows that can't be the correct understanding of Rule 704B. Everyone understands when you're calling your examining expert in a trial involving the insanity defense to offer that expert's diagnosis of the particular defendant's mental state. The reason it is relevant is because you want the jury to draw some inference about whether the defendant does or does not meet the insanity defense, the legal standard for insanity. That doesn't mean it's prohibited on 704B grounds. If we think about the insanity argument, I mean, an expert can come up to the stand and say, a person with these sorts of behaviors or sorts of symptoms, I would say that that person has schizophrenia. That's fine, right? Yes. Okay. And then could the person then say, I think that all people with schizophrenia have the I don't think that that would be objectionable on 704B grounds. I doubt it would be reliable, but it wouldn't be objectionable on 704B grounds. And because that to me, okay, is what the Hinckley controversy was about and why Congress passed this rule, that it didn't want the experts to go from the step of saying, looks to me like this person has schizophrenia to the conclusion that, okay, once we say that, we can say that this person has the necessary intent because all people with schizophrenia can form, you know, have the necessary intent or not. Yeah. I think the problem with the particular testimony that Congress was targeting in rule 704B is that the expert is drawing an explicit link between the defendant and the legal requirement that the jury has to find. That's what Congress said. No more of that. Well, that is what the expert in my hypothetical is doing. Because he's saying this defendant has a certain kind of disease and I'm going to tell you what people with this disease, you know, whether they're capable of distinguishing right from wrong or whether they're capable of having some other necessary intent for the crime. So he's saying as a fact of the matter, in his professional opinion, but 100% of the people with this disease are going to have this intent. Yeah. Well, Justice Kagan, I think you have just, that's a variation on the syllogism that we identify in our brief at pages 28 to 29. If the expert says everyone in this category, if you are in category X, it follows that you have mental condition Y. And also I as an expert have diagnosed the defendant as being in category X. You have just broken down one impermissible opinion into two steps. And we do think 704B would keep that out. But I mean, it's not the categorical nature of the testimony that is the problem here. If you have a case in which you have called an expert to describe, for example, color blindness, and that's relevant to an ultimate issue in the case. And the expert wants to come into court and say, everyone who has color blindness, this is what follows from that. The expert doesn't need to qualify that testimony in order to circumvent rule 704B. Mr. Guarnieri, you're making this a lot more complicated than I think it has to be. 704B says about whether the defendant did or did not have a mental state or condition, da, da, da. It doesn't say is relevant to. The Rules Committee presumably knew what the standard was for relevance. And if they wanted to make, to say that the expert cannot state an opinion, cannot state anything that is relevant to the issue, they would have said so explicitly. And a lot of these hypotheticals, it seems to me, are taken care of by other rules. I don't know how any expert could say 100% of the time, this is true. I don't think that's reliable. It's subject to objection under 702. And some of these matters could be handled under 403. I don't know why you're—and then some of them could just be fuel for devastating cross-examination. If an expert says 100% of the time, this is true, I think that that might well harm the case of the party who introduces that testimony. But let me ask you this. There are people who think that there's a lot of chaos in the states that comprise the Ninth Circuit. But, I don't know, until this morning, it hadn't occurred to me that maybe the cause for this chaos is the Ninth Circuit's rule about 704. Do you think that's true? MR. No, we have not seen any practical problems in implying the longstanding understanding of Rule 704B that we are advocating in this case. And, Justice Alito, to your earlier points, I entirely agree with you that many other rules would take care of some of the hypotheticals that we are battering about today. I took the Court to just be interested in how do you define the outer limits of how Rule 704B should apply. Of course, this case doesn't necessarily present any occasion to address those outer limits because Agent Flood's testimony here looked nothing like some of the hypotheticals that we've been discussing this morning. The other point I would make, Justice Alito, and we advert to this in our brief, Rule 702 was recently amended in ways that were meant to discourage experts from overstating the certainty with which they could express their opinions on the stand. Rule 702 and Daubert gatekeeping is really the way that you handle concerns that an expert is stating something in categorical or absolute terms that is just not supportable by the facts underlying the expert's opinion. Counsel, have you had any trouble convicting drug mules in the Fifth Circuit? No, Justice Gorsuch, and I take your point that this isn't going to be critical testimony in every case or, indeed, in any particular case, and we have instances in which... I mean, in this case, for example, the defendant couldn't roll down her window, and the Border Agent well knows that that usually means there are drugs stuffed inside the panels of the vehicle, right? I mean, one can draw an inference from that pretty quickly when she says, I can't roll down my window. I mean, in my experience, I mean, in the Tenth Circuit, for example, we took as a reliable indication sometimes one contributing factor for a traffic stop was there are air fresheners in the car, okay, and it was traveling below the speed limit, okay, and in a panel van, and the windows couldn't roll down. I mean, all the modus operandi evidence in the world, and you can draw inferences from that. The one thing the rule says is you can't reach inside someone's head, and it doesn't seem to be a problem in the Fifth Circuit. Justice Gorsuch, I don't dispute that. I think you're right. We are convicting defendants of illegally importing drugs in the United States in the Fifth Circuit without this testimony, and so, too, I think we could obtain convictions in the Ninth Circuit without this testimony, and we have a harmless error argument here, which, you know, I mean, the upshot of that argument is I think the other evidence in this case was overwhelming that Petitioner knew about the drugs in her car. Nonetheless, this is helpful and reliable testimony, and we think the jury should be allowed to hear it, and I think if you're thinking about the case through the lens of, you know, what is sort of the practicalities here, if you adopt Petitioner's rule, on the other hand, it's going to open up a host of arbitrary and difficult line dragging exercises that I don't think he really had persuasive answers to this morning. And so, I think what the court should do is stick to the text of Rule 704B itself, and Rule 704B only comes into play when the defendant expresses an opinion about the defendant's own, excuse me, when the expert expresses an opinion about the defendant's own mental state, and Agent Flood didn't do that here. He said in most circumstances, drug traffickers do not entrust large quantities of drugs to people who are unaware of those drugs. He explained why that was true, and he elaborated on cross-examination that, of course, he is aware of some scenarios in which the traffickers may try to use so-called blind mules, and he described the facts of those scenarios, and they don't meet the facts of this case. Everything that occurred here occurred in full compliance with Rule 704B, and we would ask the court to affirm. Thank you, counsel. Justice Thomas? Justice Alito? On the question of whether you've had difficulty convicting mules in the Fifth Circuit, it was one of the federal rules of evidence which used to be applied by district judges to exclude evidence that prosecutors wanted to admit, which was the you-don't-need-it rule. So, you know, if you don't need it, and there's a conceivable possibility that it might create an issue on appeal, the judge would keep it out. Do you think that's – we ought to create that rule, make that an enforceable – judge-made addition to the federal rules of evidence? The federal government opposes that rule, Justice Alito. Now, there's a metaphor in the advisory committee notes to Rule 401. I think it's from Professor McCormack, and he said, as to relevancy, that a brick is not a wall. And what he meant was you have to build your case up brick by brick. Every brick is not itself going to be dispositive of the whole case, but they're helpful, and we are entitled to present reliable evidence, reliable and helpful evidence of petitioner's guilt and of guilt generally in cases like this. I think this is just – it's – there's – the question shouldn't be do we need it. It's does it – is it prohibited by the federal rules or the Constitution, and this testimony is not. Justice Sotomayor? So, you have not backed off of your answer to Justice Gorsuch or to Justice Kagan that if 100 percent inference is pointing to the defendant, that's a functional equivalency and you would agree that that should be excluded, but you say it should be excluded under a different rule, perhaps, but you didn't even go that far. You said under 704, that might cross the line. To say that every defendant with schizophrenia has – doesn't know right from wrong or knows right from wrong, because some expert could say schizophrenia doesn't cloud your mind, it just makes you believe you have a reason to do it. So which is it? Well, Justice Sotomayor, two points. One, I mean, to the extent that I muddled things this morning, I regret it, but the key thing from our point of view about the application of Rule 704B is whether the testimony is framed in terms of the defendant. And I think my friend on the other side gets some mileage out of positing hypotheticals where he's talking about, oh, a class that obviously includes the defendant or necessarily includes the defendant and things like that. I think it really does matter whether the expert takes the stand and opines about the defendant in particular. That's really the key dividing line, and that's the dividing line that follows directly  Well, I think we all agree on that. He said the defendant knew that's a violation of the rule. That's right. The question is, when he says the defendant, all people who have X, Y, and Z know, you're willing to say if all people know who have X, Y, and Z, then it has to be this defendant, correct? Well, I think the key question from our perspective in confronting a hypothetical like that would be, has the testifying expert himself taken the stand and put the defendant in that class? If all that is at issue is that the jury could infer from other evidence, I mean, in order to put Petitioner in the class of drug couriers, how about if he says 99.9% no, 95% no, 90% no? Where do we draw the line? Yeah, I don't think that's the line that Rule 704B draws. It's not a rule about categorical versus conditional testimony. It's a line about expert opinion testimony about the defendant. About a defendant's mental state. Yes, and I think if you have concerns in a particular case that a defendant's opinion, excuse me, that an expert opinion is overstating the certainty with which that expert could describe some fact of the world, that's a problem under Rule 702 and Daubert. It's not a problem under Rule 704B. Mrs. Kagan? Mr. Fisher might have some line-drawing problems, but I think you do too, Mr. Guarnieri. I mean, if I understand what you're now saying, you're now saying, on the one hand, if an expert got up and said 100% of drug mules know what they're doing, that could not be excluded under your rule. But if the expert got up and said, I think that this defendant, it looks like from the packaging, she was working for this particular drug cartel. And now I'm going to tell you that 100% of mules who work for this particular drug cartel know that they're carrying drugs. Then you say it is excluded. Is that correct? Yeah, I think that is the expert expressing an opinion for the jury about the defendant having the requisite mental state. That's out under 704B. Okay, and so then if we go back to the one that is not excluded, it's the expert getting up and just saying, all drug mules have knowledge of what they're doing. I guess I'm just not seeing the difference between that statement and the other one, because everybody knows that this woman was caught in a car with drugs. So she's a drug mule, and the expert is saying all drug mules have knowledge. So once you're going to tell me that the other is excluded, that should be excluded too. Well, Justice Kagan, let me try and answer that question on two levels. Well, I just want to put it on my level. Like the level of the question. Justice Kagan, the distinction between those two is the distinction drawn in the text of expressing an opinion about the defendant. And in one, the expert is expressing an opinion, taking the stand and testifying to the jury, I, as an expert, have concluded, as a matter of my expert opinion, that the defendant had the requisite mental state. Rule 704B forbids that. Now, the second level response that I also wanted to offer to your question, Justice Kagan, is that there's a rationality, there's a reason that Congress drew the line that it drew in Rule 704B, and it has to do with the Hinckley trial and the concerns that there's a kind of an expert opinion testimony that is particularly problematic that Congress wanted to keep out. And that's it. Okay. Thank you. Justice Gorsuch? I am thoroughly confused. So a hypothetical saying someone in John Hinckley's situation, who looks just like John Hinckley but isn't John Hinckley, couldn't have had the requisite mental state, that's out. Well, again, if it's not... Is that out or in? Just out or in? I mean, the so-called mirroring hypotheticals, I think, are out. All right, okay, all right. Now I say, now I have the expert who says in the John Hinckley case, or the Mule case, just flip it around, all people with schizophrenia cannot form or can form the requisite intent or all Mules can do or do not know, in or out. I don't think a testimony like that would be objectionable in 704B. So that's all in. I'm sorry, I'd understood you in prior questions to say that was out. Did I misunderstand you or have you spoken both ways today? I do not think I've spoken both ways. The line I've tried to draw here, and it's the line that our brief articulates, is the expert opining about the defendant herself. Now why would Congress draft a rule saying experts can't opine about the defendant's mental state after the Hinckley trial and forbid a district judge from admitting evidence about a mirroring hypothetical that looks just like John Hinckley? But allow in, still allow in, an expert to say nobody in the class in which John Hinckley falls has the requisite mental state. What rational Congress would do such a thing? I think Rule 704B, if you look at the history of the provision, reflects a judgment by Congress that having dueling experts in insanity cases directly opine to the jury on whether the defendant satisfies the legal definition of insanity was unseemly, that it created a public spectacle, that undermined the integrity of the proceedings. But you're allowing in all of that testimony. You're still allowing in all of that testimony. Well, I think, again, and this... All you have to say is instead of Hinckley or instead of a mirroring hypothetical, all persons in this category. This goes back to an exchange that I had with Justice Jackson earlier. I think it was the understanding of everyone involved at the time and the text of the original rule reflects that you are still going to have experts who can come in in a criminal trial and testify with respect to the mental state or condition of the defendant. Certainly. With respect to whether he has schizophrenia. Sure. Whether he has mental illness. Yes. But not... I mean, the text of the rule says not with respect to the element of the crime or the defence. That's right. OK, thanks. Justice Kavanaugh? On the text, stick to the text. That should be our key, right? I think we win this case under the text, Justice Kavanaugh. Right. And are the hypotheticals you've been getting real-world hypotheticals? No, I don't think so. Although I will acknowledge that in the Ninth Circuit there was a time when we did elicit testimony that no drug-tracking organizations used blind mules because that's what we accurately... we honestly believed at the time. And that testimony... We don't sponsor testimony like that anymore because it's not true. And it's not true. And if someone tried to introduce testimony like that, I think, and Justice Alito said this, other rules take care of that in terms of reliability, etc. Yes. Thank you. Justice Barrett? Justice Jackson? I guess that drawing a line between testimony about a class or a group, on the one hand, and testimony about an individual happens at trial all the time. Judges are familiar with drawing that line, and I'm interested in the law professors' evidence professors' brief because they point to one context in which that happens with fair frequency, which is with respect to eyewitness testimony. And they say courts often allow expert testimony regarding factors that, on average, interfere with accurate eyewitness identifications. However, courts do not allow experts to draw an individual inference and testify that a particular witness is likely inaccurate. They go on to say because social science research isn't reliably, even though it is itself replicated and reliable, it can't support a reliable statement about an individual case, especially when that social scientist hasn't really examined that individual case. And so judges, they at least say, are pretty familiar with the kind of line. So is this the line you're drawing? Yeah, well, Justice Action, I think the point the professors are making in that brief is that concerns that the expert has testified in some way that overstates the expert's ability to draw an inference about the particular case are not unfamiliar in federal court. Courts handle those kinds of concerns every day under Rule 702, and you could have a similar dynamic for testimony like this. Right, and I guess what I'm suggesting is that there is a difference between an expert talking about a group and on average, and here are the statistics that relate to how people operate or think or whatever as a group, and that that's actually a different kind of testimony and ultimate, you know, goal and helpful thing for jurors when they're trying to draw the inference as to whether or not this individual, right, is a member of that group, meaning acted in the same way or thought in the same way. That's still left to the jury so long as the expert doesn't himself say, go on to say, and this individual is in that group, right? I think that's exactly right. We think that's how Rule 704B should work, and here, Agent Floyd certainly left a great deal for the jury, a great number of the links in the chain of inferences for the jury itself to draw. Thank you. Thank you, counsel. The bottle, Mr. Fisher? Thank you. I'd like to start by just making absolutely clear for the court that the government is not defending the Ninth Circuit's case law on this Rule 704B. So on the mirroring situation the court has talked about, there's a Ninth Circuit case from 2005 called Younger where the Ninth Circuit says that evidence is admissible because it does not particularly speak to the defendant with the defendant in italics in that opinion. So the government there is moving away from the Ninth Circuit's view. I don't fully understand exactly what the government is saying about what we've called 100% testimony or always testimony, but Justice Kavanaugh, I do want to absolutely stress those are real-world examples. They're at page 23 of our brief. That's the exact testimony that agents like Agent Floyd gave in cases like this until 2013 when the government discovered there actually were some blind mules out there. So it's merely a situation of this particular scenario where the government's backed off it for empirical reasons. But you could have other cases where an expert would testify in the real world that people with schizophrenia can never tell right from wrong, that executives in corporations, when they lie to government investigators, always know they're telling a lie. That would be perfectly real-world examples. And I think regardless of what the government's precise position is, it's very difficult to argue that kind of testimony would be okay under Rule 704B. Let me give you one last scenario about the government's line-drawing problems. There's a case called Watson from the Third Circuit that's in our brief. The government itself seems to agree with the outcome in Watson. In that case, the prosecutor asks the expert, do you have an opinion as to whether or not the defendant here had the requisite intent? The expert says, yes, I have an opinion. People like this generally have the requisite intent. The government seems to agree that is out under Rule 704B. Now, maybe that's because at pages 28 to 30 it draws a contextual rule of some kind, but there are these very difficult line-drawing problems under the government's rule. Our rule is simple. If you talk about the defendant herself, it's covered by Rule 704B or a class of people, including the defendant. You're talking... you're covered by Rule 704B. Here, the class of people... Agent Flood is quite specific. People carrying large quantities of drugs across the border. That's the class. The defendant here is unquestionably a member of that class, and so his testimony is about the defendant. I want to say one last thing. Justice Kagan and Justice Jackson asked about some of the history and intent of Rule 704B. Let's just use the Hinckley case. And the Senate report is only a page long. I would urge you to read that if you think that's important here. And what the Senate said was, we're concerned about experts testifying about the subject of mens rea. And so after the Hinckley trial, if an expert were to testify, we think people like this or exhibiting these conditions generally couldn't tell right from wrong or probably couldn't tell right from wrong or in most circumstances couldn't tell right from wrong. It seems crazy to think Congress would have thought that was OK under the Hinckley trial. The problem in the Hinckley trial was that the expert was testifying not just about facts from which a jury could infer mens rea, but jury was expressing an opinion on the ultimate issue of mens rea, from which the jury could go into the jury room and do nothing but say, oh, we agree with the expert. And whether the expert expressed that opinion in terms of probably this defendant had the mens rea or didn't have the mens rea or certainly, the problem is that the jury can go back to the jury room and say, look, sounds like Agent Flood, you know, thinks people like this generally have the mens rea. He must be right. We'll go along with that. The point of the right to jury trial and the point of the ultimate issue doctrine is that when it comes to the special subject of mens rea, and Justice Jackson, I want to be really specific here, mens rea as the element of the crime to convict or as the defense, that particular subject has a wall around it. The jury is required to make an independent, moralistic, qualitative determination. And that's what Agent Flood did wrong here. He said, most people like this know they have drugs in their car. Knowledge is the exact element of the crime. So whatever else Rule 704B may cover in terms of statements that cover mens rea, this one explicitly did, and that's why it went over the line. Thank you, counsel. The case is submitted.